## CRANE v. THOMPSON.

(Court of Appeals of District of Columbia.
Submitted December 8, 1924. Decided
April 6, 1925.)

No. 4124.

Partnership ⬤⬤95, 104—Agreement for sale of partner's interest held in effect a liquidation of the partnership business, fixing price, such that appraisement was not necessary; action at law for price of copartners' interest held proper remedy.

Partner's written agreement to purchase interest of copartners at stated date, paying therefor amounts which such partners had contributed to firm capital, plus respective shares of amount added to capital account from profits, plus respective shares of accrued net profits as of dates of sale, *held* in effect a liquidation of firm's business, fixing price of interests sold, such that no accounting ·or appraisement at date fixed for transfer . was . necessary to fix amount payable, and action at law for price, rather than in equity for .accounting, was seller's proper remedy.

Appeal from the Supreme Court of the District of Columbia.

Action by Augustus Crane against Eugene E. Thompson. · Judgment for defendant, and plaintiff ·appeals. Reversed and remanded.

B. S. Minor and H. B. Rowland, both of Washington, D. C., for appellant.

F. J. Hogan, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and HATFIELD, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice.· Augustus Crane, as plaintiff, brought an action in the lower court against Eugene E. Thompson, as defendant, alleging in substance that on and before March 17, 1916, the plaintiff and defendant, together with one Parris, were -copartners engaged in the banking and brokerage business in the city of Washington, and on that day they entered into a certain agreement, by the terms of which the defendant agreed to purchase the interest of the plaintiff in the firm on September 30 next, and to pay therefor, within 15 days from that date, as follows: (a) The proportionate amount which the plaintiff had contributed to the capital account of the firm; (b) the plaintiff's share of the amounts added to said capital account since January 3, 1914; and (c) the plaintiff's share of any accrued net profits in said business as of date of September 30—it being stipulated furthermore that, if certain notes held by said firm, known as the "Kendall and Whitlock" notes, were not paid in full by that time, the payments due to plaintiff as aforesaid should be proportionately reduced, and the notes placed in the hands of a trustee for collection, the proceeds to be divided between the parties; that on September 30, 1916, in the performance of said agreement, the plaintiff turned over his interest in said firm to the defendant, who thereupon became indebted to plaintiff (a) in the sum of $19,000 as and for the amount contributed by plaintiff 'to the capital account of the firm; (b) in the sum of $8,942.15 as and for the plaintiff's share of the amounts added to the capital account since January 3, 1914; and (c) in the sum of $4,291 as and for the plaintiff's share of the accrued net profits of the business as of September 30, 1916, said sums aggregating $32,233.15, from which aggregate should be deducted the sum of $8,437.50 under the provision aforesaid relating to the "Kendall and Whitlock" notes; that the defendant accordingly became indebted to the plaintiff in the net sum of $23,795.65, but defendant failed to pay the same. Wherefore the plaintiff prayed judgment.

The defendant filed a plea and affidavit, wherein he conceded the execution of the written instrument, dated March 17, 1916, and alleged that the plaintiff's proportionate contribution to the capital account, and the accrued net profits as of September 30, 1916, were together no more than $19,000, and that plaintiff's proportionate share of the amounts added to said capital account since January 3, 1914, was only $1,807.15. Defendant alleged, furthermore, that these sums had been fully paid to plaintiff as follows: First, by a credit of $8,437.50, as conceded by plaintiff, from the "Kendall and Whitlock" notes; second, by the sum of $1,-962.99, payable from plaintiff's interest in the firm, because of the expenses of certain litigation; third, by the sum of $7,852.59, credited by defendant to plaintiff's bank account by his direction; and, fourth, by the sum of $2,849.36 in cash—thus paying the

foregoing indebtedness in full, together with certain interest thereon.

The case was tried to the jury, and the plaintiff duly submitted evidence in support of his claim; but at the close of plaintiff's evidence the court directed a verdict for the defendant, whereupon plaintiff appealed.

It appears that the partnership commenced business on January 3, 1911, and on January 3, 1914, the partners entered into a written contract continuing it for a period of two years from that date. Among other things, this contract provided that the net profits and losses of the partnership should be divided between the partners as follows, to wit: Three-eighths to the plaintiff, three-eighths to Parris, and one-fourth to the defendant; that, for the purpose of increasing the capital of the partnership, one-fourth of the quarterly profits should be placed to the credit of the capital account before any distribution of profits should be made to the partners; that the active management and conduct of the business was committed to the defendant, who was to pass upon the sufficiency of the security offered for collateral loans, to employ the clerical force of the firm, and generally to manage and conduct its business; he was to devote his time exclusively thereto, for which he was to receive a stipulated salary, in addition to his share in the net profits of the business. In the event of the termination of the partnership by limitation, or previous dissolution, or otherwise, the partners were to receive, as between themselves, the amount contributed by them to the capital account as above recited, and the amount which should from time to time be added to capital account out of the profits of the business should be divided in the same proportion as the net profits were to be divided.

The business was continued accordingly until March 17, 1916, when the parties entered into the written agreement now in question, which reads in part as follows:

"It is hereby agreed that the copartnership business now conducted by the parties hereto under the firm name of Crane, Parris & Co., under certain articles of copartnership made and entered into on the 3d day of January, 1914, shall be continued in force until the 30th day of September, 1916, in accordance with the terms and provisions of said articles of copartnership, except as the same are hereinafter modified and changed.

"The said Eugene E. Thompson hereby agrees to purchase and take over the respective interests of said Augustus Crane and Albion K. Parris in said copartnership business on September 30, 1916, and the said Augustus Crane and Albion K. Parris hereby agree to sell their said respective interests in said business to said Eugene E. Thompson, the same to be paid for by said Thompson within 15 days next after September 30, 1916. The amount which said Thompson is to pay for said respective interests shall be the proportionate amount which Crane and said Parris respectively contributed to the capital account of said firm, and their respective shares of the amounts added to said capital account since January 3, 1914, and their respective shares of any accrued net profits in said business as of date September 30, 1916."

The ruling of the lower court, when directing a verdict for the defendant, was based upon the court's interpretation of the foregoing contract. This was explained by the court as follows:

"My view of the case * * * is that Mr. Thompson was obliged to pay to Mr. Crane whatever his share turned out to be, after an accounting to find out what profits were made and what losses were made, and what should be charged off and what was good, and after that accounting was made, then Mr. Thompson was to pay the proportionate share that Mr. Crane owned in those assets. My view is that it is only after an accounting, as in any partnership case, after the parties have had an expert go over the books, and after the party has had a right to question every item of the books, if he sees fit to do so, and after a final accurate count has been arrived at, that Mr. Thompson would be obliged to pay anything. That is why I have directed a verdict."

We think that this interpretation was erroneous. By the terms of the contract the parties agreed to a voluntary dissolution of the firm as of September 30, 1916, and to a sale and transfer to the defendant at that time of the interests of the other partners, at and for a certain agreed price, payable within 15 days thereafter. The contract did not require or contemplate a future accounting between the partners as to the partnership business prior to the date of the agreement, nor an appraisement of the partnership assets, in order to determine the value of the purchased interests. All this was distinctly avoided by the express terms of the agreement. These had the force and effect of liquidating the business of the firm as between the partners, and adopting the capital account of the firm as it then stood for the purpose of fixing the price of each of

the respective interests, to which was to be added a proportionate share of the net profits accruing as of the date of the transfer. That price accordingly became a legal debt of the defendant payable within fifteen days after the transfer, and could be enforced by an action at law.

This interpretation of the contract is confirmed by the provision which required that payment should be made by the defendant within 15 days after the transfer, and which contained no reference to an accounting or appraisement. Moreover, the provisions in relation to the "Kendall and Whitlock" notes, and for all claims or suits which might be pending against the firm at the time of the transfer, demonstrate that no accounting or appraisement of assets was intended. In this connection it is proper to note that the defendant himself was the managing partner of the firm, and was in charge of the account books, as well as the other business, of the partnership.

The claim of the plaintiff, therefore, was rightly brought as an action at law for a judgment in the sum alleged to be due him, rather than as a suit in equity for an accounting between the partners, and the lower court erred in taking the issue from the jury.

The judgment is therefore reversed, with costs, and the case is remanded, for further proceedings not inconsistent with this opinion.